AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

1308 Clifton Road, N.W., Apartment 218
Washington, DC
Land Rover Freelander, D.C. tag #CC-8269
950 F. Street N.W (box of papers)

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**
CASE NUMBER:

(Further described below)

I __RICHARD ESPINOSA__ being duly sworn depose and say:

I am a(n) __Detective with the Metropolitan Police Department__ and have reason to believe
(Official Title)
that ☐ on the person of or ☒ on the property or premises known as  (name, description and or location)

1308 Clifton Road, NW, Apartment 218, Washington, DC, is a 6 story tan brick building that is located at the intersection of 13th Street and Clifton Road, N.W. on the Southwest corner. The building is surrounded by a black metal fence that is approximately 6 feet in height. The building had the arabic numbers "1308" above the glass entry door. Apartment xxx is on the second floor of the building. Grey Green Land Rover Freelander bearing D.C. Tag CC-8269, currently parked on level B-5 at xxx F. Street N.W., Washington, DC. One box of papers and personal matters obtained from the work space of Marcia Campbell at 950 F. Street N.W.

concerning a violation of Title __18__ United States Code, Section(s) __§__ 1343, 1344. The facts to support a finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN**

Continued on the attached sheet and made a part hereof.     ☒ YES    ☐ NO

ANTHONY ALEXIS
Federal Major Crimes Section
(202) 514-9416

Signature of Affiant
RICHARD ESPINOSA, DETECTIVE
Metropolitan Police Department

Sworn to before me, and subscribed in my presence

_____     at Washington, D.C.
Date

_____     _____
Name and Title of Judicial Officer         Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

RICHARD ESPINOSA, being duly sworn, deposes and states as follows:

### INTRODUCTION

1. I am a grade one detective with the Metropolitan Police Department, currently assigned to the financial crimes section.

2. I have been a law enforcement officer for the past twenty-four years. I joined the Metropolitan Police Department ("MPD") in 1982. I have spent the past twenty years serving as an Investigator/Detective Grade II/ Detective Grade I. I have had the opportunity to be a member of several investigative sections, including: Youth Division, Arson Squad, Sex Offense Branch, Homicide Branch, Domestic Violence Coordinator and Youth & Preventive Services Division (YPSD). I am currently the squad supervisor of the Fraud Unit. In that capacity I have investigative assignments that include investigating violations involving theft and financial crimes including violations of Title 18, United States Code, Sections 1341, mail fraud, 1343, wire fraud, 1344, and bank fraud. I have testified before the Grand Jury in connection with investigative matters in each of these sections. For several years, I was a critical member of the MPD/DEA joint federal taskforce, REDRUM, which investigated high profile homicides. Working as a member of the REDRUM Task Force, I assisted other police agencies (FBI, DEA, ATF, Montgomery County Police, King George's County and Prince George's County Police). My law enforcement training and experience include preparation, presentation and service of criminal complaints, arrest and search warrants. I have participated in the execution over two hundred search warrants. I have been the affiant on affidavits in support of approximately one hundred search warrants. In addition, I have received training in general law enforcement and criminal investigations to include violations involving credit card fraud, forgery and theft

statutes.

3. I, along with the assistance of Debra L. LaPrevotte, a special agent employed by the Federal Bureau of Investigation (FBI), am conducting an investigation that an employee of an association located in the District of Columbia embezzled approximately $225,000 by engaging in bank fraud and wire fraud.

4. This affidavit is in support of an application for a search warrant to search all premises including the residential area of xxxx Clifton Road, N.W., apartment xxx, Washington, D.C. an apartment identified as the residence of Marcia Campbell and which is located within the District Coulmbia and is more fully described in Attachment A of this affidavit as well as her vehicle and one box of papers and personal matters from her work station both located at xxx F. Street, N.W.

5. This affidavit is based on my own investigation, my review of e-mails and other records, as well as, information that I have learned through communications with witnesses and other law enforcement personnel.

6. Because this affidavit is being submitted for the limited purpose of setting forth probable cause, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are sufficient to establish probable cause that Marcia Campbell has violated Title 18, United States Code, Section 1344, Bank Fraud, and Title 18 United States Code, 1343, Wire Fraud.

## PROBABLE CAUSE

7. Marcia Campbell has been employed at the Pharmaceutical Research and Manufactures of America ("PhRMA") for the past six years. Ms. Campbell's current job title is Director of Accounting. PhRMA is a D.C. based trade association/lobbying group for the pharmaceutical industry, with offices located at xxx F Street N.W., Washington, D.C.

8. On or about October 10, 2006, PhRMA was contacted by one of its vendors, National Media, Inc., which inquired about a payment that it had not received. Based on this call, PhRMA conducted an audit and found that the $73,560 that should have been transferred from its bank account at the Bank of America (a "financial institution" within the meaning of 18 U.S.C. § 20) to National Media, Inc., was actually transferred into the Washington Mutual Bank account #xxxxxxxxxx, belonging to Marcia Campbell. This wire transfer occurred on or about July 25, 2006. Ms. Campbell had access to the computer programs that permitted the improper diversion of the PhRMA funds that had been under the custody or control of the Bank of America.

9. The audit disclosed that this was not the first such diversion of PhRMA's funds to Ms. Campbell's Washington Mutual Bank account. On or about December 15, 2005, an additional transfer of $150,000, was wired to the Washington Mutual Bank account (#xxxxxxxxx) belonging to Marcia Campbell. These funds were supposed to be transferred to an account belonging to LETNOM Productions, Inc., another PhRMA vendor.

10. Marcia Campbell has not been given permission to transfer any money from the accounts owned or controlled by PhRMA to any of her accounts.

11. Since on or about May 12, 2004, Campbell has had her legitimate payroll income from PhRMA deposited into her checking account, via direct deposit, at Washington Mutual Bank (#xxxxxxxxxx). Since on or about December 15, 2005, this Washington Mutual account also has received at least $223,560 in funds stolen from PhRMA. These funds have been co-mingled with her work income.

12. Ms. Campbell has not sought to return the funds diverted from PhRMA vendor payments to her bank account. Instead, it appears that she maybe using such funds to acquire foreign assets. On about October 10, 2006, Ms. Campbell sent an email from her work computer

to "Edward Hanna." Mr. Hanna appears to be a real estate agent in Kingston, Jamaica. In this email, Ms. Campbell indicates that she had wired $59,000 to the Bank of Nova Scotia account for Edward Hanna & Company, to be applied to the closing costs for the purchase of real property in Jamaica. The email also referenced a previous wire transfer of $15,650. The total purchase price of the property appears to be $73,722.85. The $59,000 wired to Jamaica appears to have been transferred from Citibank, a financial institution where Ms. Campbell also maintains an account. Your affiant has reviewed a International Money Transfer document that indicates the flow of money from Citibank to the Bank of Nova Scotia in Jamaica.

14. On or about October 12, 2006 and October 13, 2006, members of PhRMA and financial institutions have had discussed the ongoing matters with Ms. Campbell. Ms. Campbell after being confronted with the illegal transfers has been observed removing items from her work station area, including bags of papers and exiting the building in the direction of the garage where she parks her Gray-Green Land Rover Freelander that contains D.C. Tag CC-xxxx.

15. Based upon your Affiant's training, experience and participation in numerous mail theft and financial crimes investigations involving fraudulent activities, your Affiant has learned and knows:

    a.    That individuals involved in banking fraud and wire fraud schemes very often place assets in names other than their own to avoid detection of these assets by government agencies; that they often place these assets in entities in order to avoid detection of these assets by government agencies; that even though these assets are in other persons' or companies names, they actually own and continue to use these assets and exercise dominion and control over them.

    b.    Those involved in wire fraud and bank fraud often maintain records, receipts, notes, ledgers, credit card receipts, airline tickets, money orders, and other papers

relating to financial institution fraud. That the aforementioned records, receipts, note ledgers, etc., are maintained where they have ready access. In addition, that some of the information related to fraud is often stored in computer equipment and electronic storage media.

       c.       That it is common for persons involved in fraudulent activities to secrete the proceeds of bank transactions and records of fraudulent transactions in secure locations within their residences, automobiles, and business and storage facilities for their ready access and to conceal them from law enforcement.

       d.       That persons involved in financial fraud conceal in their residences, automobiles, businesses and storage facilities, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of fraudulent activities and evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money made from engaging fraudulent activities.

       e.       That those involved in fraudulent activities commonly maintain addresses or telephone numbers in books, on papers and computers/electronic media which reflect names, addresses and/or telephone numbers of their associates.

       f.       That it is common for persons involved in fraud schemes to store information pertaining to the fraud schemes on computer hard drives, diskettes, tapes and other media capable of storing information in a form readable by computer. This information includes formats for fraudulent identification documents, and letters issued to financial institutions.

       g.       That searching and seizing information from computers often requires agents to seize most or all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment.

       h.       Your affiant knows that banks commonly mail bank statements and often

cancelled checks to the customers residences. It is reasonable to believe that financial documents related to these two bank accounts and thus related to her financial crimes will be found in her residence. Further, there is probable cause to believe that other items, such as jewelry, cash, and evidence of other fruits of her crime may be located in Campbell's residence. Your affiant knows that Campbell is from Jamaica, and has recently attempted to purchase land in Jamaica. It is reasonable to believe that Campbell possesses a U.S. or Jamaican passport and may pose a flight risk. Wherefore, it is requested that a search warrant be issued for the residence located at xxxx Clifton Street, Condominium#xxx, NW, Washington, D.C.

## CONCLUSION

16. Based on the investigation conducted by your affiant, I submit that the facts stated in this affidavit establish that there is probable cause that a search warrant be issued authorizing me, and any other assisting law enforcement officers to search the premises known as xxxx Clifton Road, N.W. Washington, D.C. , Apartment xxx which is further described in Attachment A of this affidavit, and to seize evidence, contraband, fruits and instrumentalities of the aforementioned violations, specifically the items listed in Attachment B of this affidavit.

_____
Richard Espinosa
Detective, Grade One
Metropolitan Police Department

Subscribed and sworn to before me this_____day of October, 2006.

_____
United States Magistrate Judge

Attachment A

Description of Premises to be searched:

     xxxx Clifton Road, N.W., Washington, D.C., is a 6 story tan brick building that is located at the intersection of 13th Street and Clifton Road, N.W. on the Southwest corner. The building is surrounded by a black metal fence that is approximately 6 feet in height. The Building has the arabic numbers "xxxx" above the glass entry door. The apartment is on the second floor, located on the Northwest corner of the building. It has a gray metal door with a chrome peephole with white plastic lettering containing the numbers "xxxE" next to the door.

Attachment B

Vehicle to be Searched

      Gray Green Land Rover Freelander bearing D.C. Tag CC-xxxx, currently parked on level B-5 at in xxx F. Street, N.W., Washington, D.C.

<u>Attachment C</u>

Location to be searched:

     One box of papers and personal matters obtained from the work space of Marcia Campbell at xxx F. Street N.W.

Items to be Seized

The following is a list of items to be seized through the execution of this search warrant:

a.      Mail, books, records, receipts, notes, ledgers and other papers, including any computerized electronic records or paper printouts pertaining to activity related to the transmission, production or negotiation of checks and other financial instruments

b.      Address and/or telephone notebooks and papers, including any computerized or electronic records, reflecting names, addresses and telephone numbers of individuals that may appear to be involved in or related to bank fraud, wire fraud and the distribution of the proceeds of such crimes

c.      Books, records, receipts, bank statements and bank records, credit cards, money drafts, letters of credit, wire transfers and money orders and cashiers checks, receipts, pass books, bank checks and any other items evidencing the obtaining, secreting, transfer, concealment and identification making equipment.

d.      United States currency reasonably believed to be the proceeds from fraud schemes.

e.      Photographs of Ms. Campbell and of properties associated with the expenditure of the proceeds of the bank fraud.

f.      Indicia of occupancy, residency and/or ownership of the premises, including but not limited to utility/ and telephone bills, mortgage, deed and lien records, cancelled mail and keys.

g.      Business and personal checks.

h.      Any computer hardware, including file servers, desktop computers, laptop computers, mainframe computers; electronic, magnetic or digital storagedevices such as hard drives, zip drives, CD-ROMs, floppy disks, and any other electronic media storage device; any internal and external peripheral devices (e.g. printers, scanners) and any of the above listed records, documents or materials which are maintained on computer located at the premises, to include the device, (computer), wherein these records, documents or materials are maintained.

I.      Computer passwords and other data security devices necessary to gain access to any computer equipment or electronic storage devices seized during the search.

j.      Any door, safe, locked boxes or receptacles where the aforementioned items may be stored.

k.      Any and all fruits, instrumentalities, and evidence of the crimes of 18 U.S.C. sections 1343, 1344.